UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. **25-CR-20102-RUIZ/LOUIS**

18 U.S.C. § 1959

UNITED STATES OF AMERICA

vs.

JOSE EZEQUIEL GAMEZ-MARAVILLA,
    a/k/a "Chango,"
HUGO ADIEL BERMUDEZ-MARTINEZ,
    a/k/a "Blue,"
and
WILBER ROSENDO NAVARRO-ESCOBAR,
    a/k/a "Power,"

          Defendants.
_____/

FILED BY **BM** D.C.
**Mar 6, 2025**
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise stated:

#### Background of MS-13

1. The defendants, **JOSE EZEQUIEL GAMEZ-MARAVILLA, a/k/a "Chango," HUGO ADIEL BERMUDEZ-MARTINEZ, a/k/a "Blue," and WILBER ROSENDO NAVARRO-ESCOBAR, a/k/a "Power,"** were members and associates of La Mara Salvatrucha, also known as "MS-13." MS-13 is a violent, transnational criminal organization involved in a variety of criminal activities, including murder, aggravated assault, extortion, abduction, kidnapping, obstruction of justice, and drug trafficking in the Southern District of Florida and elsewhere.

2.      MS-13 members and associates are located throughout the United States, including in New York, Virginia, Maryland, Florida, and California.  MS-13 also has a large international presence in El Salvador, Guatemala, Honduras, and Mexico.  MS-13 recruited members and associates predominantly from the Hispanic community.

3.      MS-13 originated in the 1980's in the United States among Central American immigrants in southern California.  Numerous MS-13 members were deported from the United States back to El Salvador and other Central American countries in the 1990's.  These members grew the gang in El Salvador, Honduras, and Guatemala, and expanded MS-13 across the United States, including to the Southern District of Florida.  MS-13 also developed rules for members and a leadership hierarchy.

4.      MS-13's national and international leadership is concentrated primarily in California and El Salvador.  Many of these high-ranking MS-13 members are incarcerated and participate in the gang's affairs by using contraband cellular telephones.

5.      MS-13 is organized into a series of sub-units, or "cliques," that operate in specific geographic locations.  Although each clique has its own internal traditions, all MS-13 cliques adhere to the same basic structure, customs, protocols, and objectives.  According to MS-13 rules, any act committed in furtherance of a clique is, by definition, committed in furtherance of MS-13 as a whole.

6.      Each clique is controlled by a single leader, sometimes known as the "First Word," "Primera Palabra," or "Palabrero."  The First Word is responsible for, among other things, supervising a clique's activities, authorizing and assigning gang members to carry out violent acts, and disciplining gang members.  A clique's leadership often includes at least one deputy,

sometimes known as the "Second Word," who consults with the First Word and weighs in on planned gang activity.

7. Sometimes, MS-13 cliques within a particular geographical area are grouped together into a regional organization known as a "program." For example, numerous MS-13 cliques located on the East Coast of the United States were historically part of the "East Coast Program."

8. Individuals who associate and commit crimes with the gang are called "paisas," "paros," or "observaciones." Individuals who are attempting to join the gang are called "chequeos," or "cheqs." Chequeos undergo a probationary period during which they are required to commit crimes on behalf of MS-13 to garner trust and prove their loyalty to the gang. To join MS-13 and become full members, or "homeboys," prospective members are required to complete an initiation process, often referred to as being "jumped in," or "beat in," to the gang. During that initiation, other members of MS-13 will beat the new member, usually until a gang member is finished counting aloud to the number thirteen, representing the "13" in MS-13.

9. MS-13 members demonstrate their affiliation with the gang in various ways, including: wearing blue and white clothing, hats, bandanas, and other accessories in reference to the Salvadoran flag, or Los Angeles Dodgers apparel in reference to the city of the gang's founding; displaying tattoos signifying membership in a particular clique, or in MS-13 generally; and using a system of verbal codes and hand signals to communicate with each other. Some MS-13 members have chosen not to have tattoos or to have them placed on areas where they can be easily covered, such as the hairline, in order to conceal their gang affiliation from law enforcement.

10. MS-13 members are required to follow various rules. In most cases, gang members who violate the rules are punished with a beating, a practice commonly referred to as "corte" or "calenton."

11. Cooperation with law enforcement is strictly prohibited under MS-13's rules. It is well understood within the gang that anyone who assists the authorities will be punished with death, and that the gang honors those who have killed police informants.

12. MS-13 cliques fund their activities in part through the payment of dues by its members. Under this scheme, MS-13 members are required to make regular tribute payments to their respective cliques. A portion of this money is typically kicked back to gang leaders in El Salvador, or to leaders of a program. The remainder of the money is typically used to purchase firearms and other weapons for use in violent acts, to purchase drugs for redistribution, to support incarcerated gang members, or to finance other gang-related activity. Failure to make timely dues payments is considered to be a violation of gang rules, generally punishable by a beating.

13. Sometimes, MS-13 cliques will also extort legitimate and illegitimate businesses operating in the gang's territory, threatening the business owners and/or their family members with violence if they do not make payments to MS-13.

14. MS-13 members meet regularly to discuss the gang activity. At these meetings, sometimes referred to as "misas," "masses," or "church," members of a clique discuss their recent criminal activities and plan future violent acts. The First Word and/or their deputies preside over the meetings, lead discussions, and issue orders.

15. One of MS-13's primary goals is to destroy its rival gangs, which vary depending on location, but generally include the 18th Street Gang, Brown Pride, and the Latin Kings. Gang rules require that MS-13 members confront, fight, and/or kill rival gang members when possible.

MS-13 members sometimes refer to rival gang members using derogatory names, including "chavalas" (for any rival gang member).

16. MS-13 retaliates quickly and viciously against anyone who disrespects or threatens the gang's authority, power, reputation, or control of a neighborhood. Within MS-13, participation in criminal activity by a member or associate, particularly violent acts directed at rival gangs or as directed by gang leadership, increases the respect accorded to that member or associate, results in associates and members earning membership, maintaining, or increasing their position in the gang, and could result in a promotion to a leadership position.

17. When a rival gang member, disloyal and/or disobedient gang member, or other individual is ordered to be killed, he is said to be "green lighted." Obtaining a "green light" typically requires the authorization of a clique leader and, in some cases, approval from gang leaders in California or El Salvador. When preparing to kill a rival gang member or other individual, MS-13 cliques often assign gang members to follow, or "watch," the targeted individuals to learn their patterns and movements, enabling the gang to carry out the murders at opportune times, without alerting law enforcement.

18. One of the MS-13 cliques that operated in the Southern District of Florida is Guanacos Lil Cycos Salvatruchas, also known as "GLCS." The GLCS clique and its leaders, members, and associates adhere to the same basic structure, customs, protocols, and objectives shared by other MS-13 cliques, as described above. The defendants, **JOSE EZEQUIEL GAMEZ-MARAVILLA, a/k/a "Chango," HUGO ADIEL BERMUDEZ-MARTINEZ, a/k/a "Blue," and WILBER ROSENDO NAVARRO-ESCOBAR, a/k/a "Power,"** were members or associates of MS-13, and associated with each other and members and associates of the GLCS clique in the Southern District of Florida.

### Enterprise Engaged in Racketeering Activity

19.     At all times relevant to this Indictment, MS-13, including its leadership, membership, and associates, constituted an enterprise, as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce ("the MS-13 enterprise"). The MS-13 enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

### Purposes of the Enterprise

20.     The purpose of the MS-13 enterprise, including its members and associates, include, but are not limited to, the following:

   a. Preserving and protecting the power, territory, reputation, and profits of the enterprise through the use of intimidation, threats of violence, and violence, including assaults and murder;

   b. Promoting and enhancing the enterprise and the activities of its leaders, members, and associates, including, but not limited to, murder, extortion, drug trafficking, and other criminal activities;

   c. Keeping victims, potential victims, and community members in fear of the enterprise through violence and threats of violence;

   d. Providing financial support and information to gang leaders, members, and associates, including individuals incarcerated in the United States and El Salvador; and

   e. Providing assistance to gang leaders, members, and associates who committed crimes on behalf of the enterprise.

21. At all times relevant to this Indictment, the MS-13 enterprise, through its leaders, members, and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder and extortion, in violation of Florida Law; offenses involving drug trafficking, in violation of Title 21, United States Code, Sections 846 and 841; and acts indictable under Title 18, United States Code, Section 1951(relating to interference with interstate and foreign commerce by robbery and extortion), and Title 18, United States Code, Section 1956 (relating to money laundering).

## Means and Methods of the Enterprise

22. The means and methods by which members and associates of the MS-13 enterprise conduct and participate in the conduct of the affairs of the enterprise include, but are not limited to, the following:

   a. Members and associates of the enterprise attend regular meetings where gang membership, gang business, and criminal incidents are discussed; financial proceeds from criminal and other activity (including drug trafficking) are collected as "dues" to benefit the enterprise and its leaders and members; and disciplinary beatings of fellow MS-13 members are administered.

   b. To enforce discipline within the enterprise, members and associates of the enterprise punish errant gang members and associates for violations of gang rules. Administration of such punishment is referred to as a "violation" and commonly involves a physical assault of the offending member or associate.

   c. To generate income, MS-13 members and associates engage in illegal activities under the protection of the enterprise, including drug trafficking, robbery, extortion, and other illegal activities.

d. For protection, attacks, and armed combat, MS-13 members and associates acquire, share, carry, and use firearms and knives.

e. Members and associates of the enterprise use gang-related terminology, symbols, phrases, and gestures to demonstrate affiliation with the gang.

f. Members and associates of the enterprise use cellphones and social media to communicate with one another and post on social media websites, such as Facebook and Instagram, messages, comments, videos, and photographs referring to, among other things, shootings, violent acts, firearms, and drug trafficking.

g. To perpetuate the enterprise and to maintain and extend their power, members and associates of the enterprise commit and conspire to commit acts involving murder, intimidation, and assault against individuals who pose a threat to the enterprise or jeopardize its operations, including rival gang members, MS-13 gang members and associates who have violated the gang's rules or otherwise shown disrespect to the gang, and witnesses to illegal activities of the enterprise.

h. Members and associates of the enterprise hide, misrepresent, conceal, and cause to be hidden, misrepresented, and concealed, the objectives of acts done in furtherance of the enterprise, and use coded language and other means of communication to avoid detection and apprehension by law enforcement authorities.

## COUNT 1
### Murder in Aid of Racketeering Activity
### (18 U.S.C. § 1959)

1. Paragraphs 1 through 22 of this Indictment are incorporated as if fully set forth herein.

2. On or about May 3, 2015, in Broward and Palm Beach Counties, in the Southern District of Florida, the defendants,

**JOSE EZEQUIEL GAMEZ-MARAVILLA,**
a/k/a "Chango,"
**HUGO ADIEL BERMUDEZ-MARTINEZ,**
a/k/a "Blue," and
**WILBER ROSENDO NAVARRO-ESCOBAR,**
a/k/a "Power,"

along with others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity, while aiding and abetting each other, did knowingly and intentionally murder G.V.P., in violation of Florida Statutes 782.04(1) and (2), and 777.011.

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

### NOTICE OF SPECIAL FINDINGS

The Grand Jury finds that:

**I.   Special Findings as to Count 1**

Pursuant to Chapter 228 (Sections 3591 through 3599) of Title 18 of the United States Code, the following factors exist regarding defendants **JOSE EZEQUIEL GAMEZ-MARAVILLA, a/k/a "Chango," HUGO ADIEL BERMUDEZ-MARTINEZ, a/k/a "Blue," and WILBER ROSENDO NAVARRO-ESCOBAR, a/k/a "Power,"** and their commission of the offenses charged in Count 1, the allegations of which are fully re-alleged and incorporated herein by this reference.

A. <u>Statutory Factors Enumerated Under Title 18, United States Code, Section 3591(a).</u>

1. <u>Defendants' Ages.</u> Defendants **JOSE EZEQUIEL GAMEZ-MARAVILLA, a/k/a "Chango," HUGO ADIEL BERMUDEZ-MARTINEZ, a/k/a "Blue," and WILBER ROSENDO NAVARRO-ESCOBAR, a/k/a "Power,"** were each 18 years of age or older at the time they committed the offense. Title 18, United States Code, Section 3591(a).

2. <u>Defendants' Mental State.</u>

a. Defendants **JOSE EZEQUIEL GAMEZ-MARAVILLA, a/k/a "Chango," HUGO ADIEL BERMUDEZ-MARTINEZ, a/k/a "Blue," and WILBER ROSENDO NAVARRO-ESCOBAR, a/k/a "Power,"** intentionally killed the victim, G.V.P. Title 18, United States Code, Section 3591(a)(2)(A).

b. Defendants **JOSE EZEQUIEL GAMEZ-MARAVILLA, a/k/a "Chango," HUGO ADIEL BERMUDEZ-MARTINEZ, a/k/a "Blue," and WILBER ROSENDO NAVARRO-ESCOBAR, a/k/a "Power,"** intentionally inflicted serious bodily injury that resulted in the death of the victim, G.V.P. Title 18, United States Code, Section 3591(a)(2)(B).

c. Defendants **JOSE EZEQUIEL GAMEZ-MARAVILLA, a/k/a "Chango," HUGO ADIEL BERMUDEZ-MARTINEZ, a/k/a "Blue," and WILBER ROSENDO NAVARRO-ESCOBAR, a/k/a "Power,"** intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, G.V.P., died as a result of the act. Title 18, United States Code, Section 3591(a)(2)(C).

d. Defendants **JOSE EZEQUIEL GAMEZ-MARAVILLA, a/k/a "Chango," HUGO ADIEL BERMUDEZ-MARTINEZ, a/k/a "Blue," and WILBER ROSENDO NAVARRO-ESCOBAR, a/k/a "Power,"** intentionally and specifically engaged in an act of

violence, knowing the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, G.V.P., died as a direct result of the act. Title 18, United States Code, Section 3591(a)(2)(D).

A TRUE BILL

_____
FOREPERSON

_____
HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

_____
BRIAN DOBBINS
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: **25-CR-20102-RUIZ/LOUIS**

v.

JOSE EZEQUIEL GAMEZ-MARAVILLA,
a/k/a "Chango," et al.,

Defendants.
_____/

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
- [✓] Miami
- [ ] Key West
- [ ] FTP
- [ ] FTL
- [ ] WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) Yes
   List language and/or dialect: Spanish
4. This case will take __15__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I  [ ]  0 to 5 days
   - II [ ]  6 to 10 days
   - III [✓] 11 to 20 days
   - IV [ ] 21 to 60 days
   - V  [ ] 61 days and over

   (Check only one)
   - [ ] Petty
   - [ ] Minor
   - [ ] Misdemeanor
   - [✓] Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) Yes
   If yes, Judge Rodolfo A. Ruiz II      Case No. 22-CR-60078-RUIZ(s)(s)
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) Yes
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____
Brian Dobbins
Assistant United States Attorney
SDFL Court ID No. A5501182

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** JOSE EZEQUIEL GAMEZ-MARAVILLA, a/k/a "Chango"

**Case No:** _____

Count #: 1

Murder in Aid of Racketeering

Title 18, United States Code, Section 1959(a)(1)

* **Max. Term of Imprisonment: Death**
* **Mandatory Min. Term of Imprisonment (if applicable): Life**
* **Max. Supervised Release: 5 years**
* **Max. Fine: $250,000**

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**PENALTY SHEET**

**Defendant's Name:** HUGO ADIEL BERMUDEZ MARTINEZ, a/k/a "Blue"

**Case No:** _____

Count #: 1

Murder in Aid of Racketeering

Title 18, United States Code, Section 1959(a)(1)

* Max. Term of Imprisonment: Death
* Mandatory Min. Term of Imprisonment (if applicable): Life
* Max. Supervised Release: 5 years
* Max. Fine: $250,000

*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** WILBER ROSENDO NAVARRO-ESCOBAR, a/k/a "Power"

**Case No:** _____

Count #: 1

Murder in Aid of Racketeering

Title 18, United States Code, Section 1959(a)(1)

* **Max. Term of Imprisonment: Death**
* **Mandatory Min. Term of Imprisonment (if applicable): Life**
* **Max. Supervised Release: 5 years**
* **Max. Fine: $250,000**

***Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**